*524 OPINION OF THE COURT
John L. Kase, J.
Background
On February 7, 2011, a 107-count indictment was filed with the Nassau County Court Clerk charging 14 defendants, each with a count of enterprise corruption, conspiracy in the fourth degree and scheme to defraud in the first degree. Each defendant was charged with additional differing counts, including money laundering in various degrees, falsifying business records in various degrees, identity theft in the first degree and grand larceny in various degrees.
Incidental to the enterprise corruption count, more than 100 pattern criminal acts were set forth in the indictment. In addition thereto, over 40 overt acts were listed under the conspiracy count.
All defendants were arraigned and, on April 6, 2011, specific dates were scheduled by the court regarding time limitations for plea negotiation and discovery.
On that date, in light of the large number of defendants, attorneys, witnesses, and the complexity of the case, a firm date of October 17, 2011 was set for the commencement of trial. All attorneys were directed to make themselves available for trial in accord with the set date.
The court inspected the 1,200 plus pages of grand jury minutes and issued orders on omnibus motions. Various discovery issues were resolved.
Several defendants entered pleas of guilty and were either sentenced or are currently awaiting sentence.
On October 17, 2011, four of the defendants had not arrived at a disposition and were about to proceed to trial. Preliminary logistic matters were settled and a jury panel was ordered for October 20, 2011 in anticipation of the commencement of jury selection relative to the trial of the remaining defendants: Alfred Gary, Stephanie Watkins, Larinzo Clayton and Ethan Berlin.
Prior to the jury panel entering the courtroom, the People disclosed that they had just discovered that the District Attorney, when filing the indictment, failed to file a special information relative to the enterprise corruption charge and consisting of a statement to the court attesting that she had reviewed the substance of the evidence presented to the grand jury and *525 concurred in the judgment that the charge is consistent with legislative findings in article 460 of the Penal Law.
Later that same day, a special information pursuant to CPL 200.65 was filed with the Clerk of the Nassau County Court. The information was executed by Honorable Kathleen M. Rice, the District Attorney of Nassau County. The District Attorney’s attestation, dated October 20, 2011, is as follows:
“BE IT REMEMBERED that by this Information, I, KATHLEEN M. RICE, District Attorney of the County of Nassau, State of New York, attest that I am the District Attorney of Nassau County.
“I further attest that I have reviewed the substance of the evidence presented to the Grand Jury which voted the Enterprise Corruption count under Indictment 225N-11 and I concur in the judgement that the charge is consistent with the legislative findings in Article 460 of the Penal Law of the State of New York.”
The trial was adjourned until October 24, 2011 for the attorneys to make whatever applications deemed by them to be appropriate and further to make submissions in support thereof if they desired. Jury selection was adjourned so as to permit a full and complete airing of the issues attending the People’s revelation.
The defendants had submitted the letter of Richard Langone, Esq., attorney for Stephanie Watkins, dated October 24, 2011. Mr. Langone had attached to his letter legislative documents including then Attorney General Robert Abrams Memorandum for the Governor relative to “The Organized Crime Control Act” bill.
A submission dated October 24, 2011, in the form of a motion to dismiss the enterprise corruption count, was provided by David Smith, Esq., the attorney for Larinzo Clayton. Attached thereto was the Abrams Memorandum, as well as the decision in People v Marquez (NYLJ, July 22, 1996, at 25, col 6 [Sup Ct, NY County]).
One of the assistants assigned to try the case, Assistant District Attorney Abigail Margulies, submitted her affirmation dated October 24, 2011. Attached was the October 23, 2011 affirmation of Meg Reiss, Esq., the Executive Assistant District Attorney in charge of the Investigations Division of the Nassau County District Attorney’s Office from January 2006 to September 2011, and Chief of Staff to the District Attorney *526 from December 2009 to September 2011, an eight-page memorandum of law, a copy of the decision of Queens County Supreme Court Justice Joel L. Blumenfeld in People v Saleem Latif, Robert Franov, and Pedro Puello (indictment No. 1824/2007) and a copy of the decision in People v Marquez (NYLJ, July 22, 1996, at 25, col 6).
On October 24, 2011, at this court’s request, the People provided, for in camera review, copies of Penal Law § 460.60, letters sent by Nassau County District Attorney Kathleen M. Rice, including the consent of the “Affected District Attorneys” to the charge of enterprise corruption set forth in indictment 225N-11.
Michael Premisler, Esq., the then attorney for Alfred Gary, had submitted a letter dated October 27, 2011.
On October 26, 2011, defendants Ethan Serlin and Stephanie Watkins entered pleas of guilty and withdrew all motions. On October 27, 2011, Larinzo Clayton entered guilty pleas and withdrew all motions.
On October 27, 2011, the People submitted the affirmation of Assistant District Attorney Marshall Trager, one of the assistants prosecuting the indictment.
The remaining defendant, Alfred Gary, has changed attorneys and awaits trial.
Inasmuch as defendant Gary joined in the applications of his codefendants and adopted their arguments, the aforementioned submissions will be considered by the court.
Discussion
The issue presented to this court is what effect, if any, the People’s late filing of the CPL 200.65 information has on the enterprise corruption count.
The class B felony, “Enterprise corruption,” Penal Law § 460.20, was enacted as part of the Organized Crime Control Act (OCCA) in an effort to combat organized crime in the State of New York.
The statute is largely grounded upon the federal Racketeer Influenced and Corrupt Organizations Act (RICO) enacted in 1971, as are similar pieces of legislation existing in other states.
The application of OCCA is more limited than that of RICO. The law as enacted was codified with the legislative findings set out in Penal Law § 460.00, immediately preceding the definition section and the elements of the crime of enterprise corruption. *527 Although OCCA has its roots in the federal RICO statute, “[t]he organized crime control act is a statute of comparable purpose but tempered by reasonable limitations on its applicability, and by due regard for the rights of innocent persons.” (Penal Law § 460.00.)
The legislative findings continue:
“Once the letter of the law is complied with, including the essential showing that there is a pattern of conduct which is criminal under existing statutes, the question whether to prosecute under those statutes or for the pattern itself is essentially one of fairness. The answer will depend on the particular situation, and is best addressed by those institutions of government which have traditionally exercised that function: the grand jury, the public prosecutor, and an independent judiciary” (Penal Law § 460.00).
In the furtherance of the tenor of the legislative findings and on the occasion of the enactment of the OCCA, CPL 200.65 was passed into law as an implementing provision. The section reads, in pertinent part:
“When filing an indictment which charges enterprise corruption in violation of article four hundred sixty of the penal law . . . , the district attorney must submit a statement to the court attesting that he or she has reviewed the substance of the evidence presented to the grand jury and concurs in the judgment that the charge is consistent with legislative findings in article four hundred sixty . . . .” (Emphasis supplied.)
The crime of enterprise corruption was clearly fashioned as part of a legislative effort to stem and punish the activities of organized crime. It was not designed to punish those defendants for “relatively minor or isolated acts of criminality which, while related to an enterprise . . . , can be adequately and more fairly prosecuted as separate offenses.” (Penal Law § 460.00.) “The legislature inserted this provision^ CPL 200.65,] to assure that the indictment has received personal review and concurrence in the charge by the chief prosecuting officer of the jurisdiction.” (Preiser, Practice Commentaries, McKinney’s Cons Laws of NY, Book 11A, CPL 200.65, at 15.)
It is clear that CPL 200.65 is a mandate which imposes upon the District Attorney a nondelegable duty to review the substance of the grand jury evidence to determine whether the *528 investigation may appropriately be prosecuted as an enterprise corruption case in accord with the considerations set forth in the legislative findings.
In the instant case, the facts are not in dispute. A special information, pursuant to CPL 200.65, was filed by the Nassau County District Attorney, not on the occasion of the filing of the indictment as required by the statute, but rather, on October 20, 2011, eight months after the filing of the indictment.
Although the filing of the information was not contemporaneous with the filing of the indictment, evidence has been presented by the Office of the District Attorney from which it reasonably may be deduced that the District Attorney, at the time of the filing, had reviewed the substance of the evidence presented to the grand jury and made a determination that the charge of enterprise corruption was consistent with the legislative findings as set forth in article 460 of the Penal Law.
In that regard, Assistant District Attorney Abigail Margulies, who presented the case to the grand jury, affirmed that throughout the investigation and the grand jury presentation, which began in August of 2010, she advised then Executive Assistant District Attorney Reiss of the status of the investigation and the presentation.
Ms. Margulies also informs the court that a 72-page memorandum detailing evidence gathered during the course of the investigation and evidence presented to the grand jury, dated December 3, 2010, was provided to both Ms. Reiss, as well as the District Attorney.
In addition thereto, Assistant District Attorney Margulies describes in her affirmation several conversations she had with Ms. Reiss regarding the progress of the investigation and presentation.
Between December 6, 2010 and December 15, 2010, Assistant District Attorney Margulies affirms, that she was informed that District Attorney Rice had approved of the submission of the charges to the grand jury and further that District Attorney Rice had made a determination that the enterprise corruption charge was appropriate and consistent with the legislative findings.
The then Executive Assistant District Attorney and Chief of Staff to the District Attorney, Meg Reiss, affirms that beginning in August 2010 through December 2010, she held meetings with Assistant District Attorney Margulies and certain bureau chiefs *529 at which meetings progress of the investigation and presentation were discussed in detail and further that the subject matter of the meetings was provided to the District Attorney personally by Ms. Reiss.
Ms. Reiss, in her affirmation, confirms that Assistant District Attorney Margulies was instructed to provide a copy of the aforementioned 72-page memorandum to the District Attorney following which the District Attorney and Ms. Reiss discussed the memorandum.
Finally, Ms. Reiss affirms that
“on or about December 13, 2010, I met with the District Attorney and Bureau Chief Diane Peress and discussed the grand jury presentment and the proposed submission of charges relating to various individuals who were the subjects of the grand jury presentment. The District Attorney then approved the submission of the proposed charges to the grand jury, including the specific charge of Enterprise Corruption (Penal Law § 460.20). The District Attorney told me that she concurred in the recommendation that a prosecution of the above captioned defendants and others should include a charge of Enterprise Corruption and that such a prosecution would be consistent with the legislative findings of Penal Law § 460.00.” (Reiss affirmation 1Í 5.)
The court has reviewed the People’s in camera submission consisting of copies of letters soliciting the consent of “Affected District Attorneys” pursuant to the requirements set forth in Penal Law § 460.60. The letters, each executed by the Nassau County District Attorney, and each dated December 9, 2010, described the allegations and the investigation in sufficient detail as to suggest a comprehensive familiarity with the case.
Recourse to reported cases has not been productive in locating controlling authority. Analogies to parallel or similar statutes have likewise been nonproductive.
Although not persuasive authority, People v Marquez (NYLJ, July 22, 1996, at 25, col 6) factually is on all fours with the case herein. In Marquez, the People filed their CPL 200.65 statement almost nine months after they filed the indictment. Justice Weissberg, in denying the defendant’s motion to dismiss, found that the facts and circumstances attending the late filing demonstrated that District Attorney Robert Morgenthau was aware of his duties and although he untimely filed, he did in fact *530 review the matter before recommending prosecution, thus fulfilling the purpose of the filing requirements as contemplated by the legislature.
Although Marquez is not controlling, the reasoning applied by Justice Weissberg makes sense to this court and is appropriately applied herein.
The People’s late filing, although a departure from the statutory scheme, is purely ministerial and does not render the indictment or the enterprise corruption count subject to dismissal.
Contemporaneous with the investigation and the grand jury presentation, the Nassau County District Attorney was privy to the details of the prosecution through meetings, a 72-page prosecution memorandum, as well as discussions with her chief of staff, bureau chiefs and the presenting assistants.
All the above occurred during the course of the investigation and the presentation, and is documented, in great detail, in the affirmations of both Assistant District Attorney Abigail Margulies and then Executive Assistant District Attorney Meg Reiss.
Most significantly, the District Attorney’s familiarity with the facts of the investigation and her knowledge of the substance of the evidence presented to the grand jury, as well as her concurrence with presenting the enterprise corruption count are expressed in, and corroborated by, the substance of the Penal Law § 460.60 “Affected District Attorney” letters.
Accordingly, this court finds that the late filing of the special information, as required by CPL 200.65, does not render the enterprise corruption count in the indictment dismissible.